NO. 07-07-0334-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

FEBRUARY 2, 2009

_____

CLAYLON J. COOPER, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE COUNTY COURT AT LAW NO. ONE OF LUBBOCK COUNTY;

NO. 2006-499,733; HONORABLE LARRY B. "RUSTY" LADD, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Claylon J. Cooper, Jr., was convicted by a jury of driving while intoxicated. The court sentenced Appellant to a term of confinement of ninety days in the Lubbock County Jail and a fine of $500, with the period of confinement being suspended in favor of eighteen months of community supervision. By one issue, Appellant maintains the trial

court erred by charging the jury on the synergistic effect[1] of combining drugs and alcohol because there was no evidence of a synergistic relationship between the medication being taken by Appellant and alcohol. We affirm.

## Background

On May 11, 2006, Appellant was arrested for the offense of driving while intoxicated after he was discovered "slumped" over in the driver's seat of his vehicle, while his vehicle sat at a controlled intersection in Lubbock, Texas. In June 2007, his case was tried to a jury and in his opening statement, Appellant's counsel asserted Appellant was asleep at the wheel of his vehicle due to a let down following a dose of Adderall, a prescription drug used to treat Appellant's condition of Attention-Deficit Hyperactivity Disorder (ADHD).

John Barber, an officer for the Lubbock Police Department, testified that, on May 23, 2006, he observed Appellant's pickup truck sitting in an intersection at 3:00 a.m. After the truck remained stationary through a green traffic light, Barber drove by the truck and observed Appellant slumped behind the steering wheel. The engine was running, headlights were on, and the brake lights were flashing intermittently. Barber walked up to the truck, opened the door on the driver's side, and turned the ignition off. As he did, Appellant stirred and started to waken. The music coming from within the cab was very loud. After Appellant took his foot off the brake, the truck started to roll into the

---

[1]A synergistic effect is the capacity of two or more discrete agencies, e.g., drugs and alcohol, to interact in such a way that the total effect is greater than the sum of the individual effects.

intersection.  Barber reached in the truck and put the transmission in "park."  Barber asked Appellant why he was passed out behind the wheel and Appellant responded that he could not explain it.  He asked Appellant if he had been drinking, and Appellant responded affirmatively.

As Barber asked Appellant for his license and proof of insurance, Sergeant Hyatt arrived to assist.  Barber told Appellant that he could smell an odor of alcoholic beverage coming from his breath and the cab interior.  He asked Appellant for an explanation and received none.  Barber performed several field sobriety tests.  After administering the Horizontal Gaze Nystagmus, Barber concluded there was a strong probability that Appellant was intoxicated because he exhibited six indicators.  Barber next administered the walk and turn and leg stand tests.  Both tests resulted in strong indicators to Barber that Appellant was intoxicated.  Barber arrested Appellant and asked whether Appellant would submit to a breath test.  Appellant declined.  When Appellant's vehicle was inventoried,  Sergeant Hyatt found an unopened twelve ounce can of beer underneath the front seat.  He also found a driver's license belonging to someone else in Appellant's wallet.

Daretia Cooper, Appellant's mother, testified that, in the tenth grade in high school, Appellant was diagnosed with ADHD and was prescribed a daily dosage of Adderall XL. She also testified that his medication could cause him to be "either bouncing off the walls or he's asleep." She testified that, on at least two prior occasions, when her son's Adderall

dosage was wearing off he would suddenly fall asleep without warning. In her opinion, after watching the police video of his arrest, she believed he appeared to be asleep rather than intoxicated.

Based upon the testimony of Appellant's mother, the State requested that the trial court issue a synergism charge. Appellant's counsel objected asserting that the State had failed to offer any evidence that alcohol would interact with Adderall to produce intoxication. The State responded that his mother had testified that coming off the drug caused her son to suddenly fall asleep and that the consumption of alcohol could compound this effect. The court overruled Appellant's objection and issued a synergism charge.[2] Thereafter, the jury issued a guilty verdict, the court assessed punishment, and this appeal followed.

**Discussion**

I.      Standard of Review

We review charge error using a two-step process. *Abdnor v. State,* 871 S.W.2d 726, 731 (Tex.Crim.App.1994). First, we determine whether error occurred; and if so, we evaluate that error to determine whether sufficient harm resulted therefrom to require

---

[2]The trial court included the following "synergistic effect" instruction in its charge to the jury:

You are further instructed that if a person by the use of medications or drugs renders himself more susceptible to the influence of intoxicating liquor than he otherwise would have been and by reason thereof became intoxicated from the recent use of intoxicating liquor, he would be in the same position as though his intoxication was produced by the use of intoxicating liquor alone.

4

reversal. *Id.* at 731-32. The degree of harm required for reversal depends on whether the appellant preserved that error by objection. *Id.* A properly preserved error will call for reversal as long as the error is not harmless. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985)(op. on reh'g), *reaffirmed, Middleton v. State,* 125 S.W.3d 450, 453 (Tex.Crim.App. 2003). In other words, error in the charge that is properly preserved by a timely objection requires reversal if the error is "calculated to injure the rights of [the] defendant," meaning that there must be *some harm* to the accused from the error. Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); *see Abdnor,* 871 S.W.2d at 732; *Almanza,* 686 S.W.2d at 174.

II.     Charge Error

In presenting its charge to the jury, it is incumbent upon a trial court to distinctly instruct the jury on the law applicable to every issue raised by the evidence, *Cantu v. State*, 170 Tex.Crim. 375, 341 S.W.2d 451, 452-53 (1960); *Mullins v. State*, 173 S.W.3d 167, 178 (Tex.App.–Fort Worth 2005, no pet.), regardless of whether the evidence favors the State or the accused. *See* Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 2007); *Givens v. State*, 749 S.W.2d 954, 959 (Tex.App.–Fort Worth 1988, pet. ref'd). Appellant contends the trial court should not have given the synergistic effect instruction because there was a lack of evidence supporting a synergistic relationship between alcohol and the medication Appellant was taking. Appellant argues that because there was no evidence

5

supporting any inference that his use of Adderall rendered him more susceptible to the influence of alcohol the instruction was not part of the law applicable to the case.

In *Gray v. State*, 152 S.W.3d 125 (Tex.Crim.App. 2004), the Court of Criminal Appeals did authorize the use of a synergistic effect instruction in a driving while intoxicated prosecution where there was some evidence presented at trial that the accused's use of a prescription drug rendered him more susceptible to the loss of use of his mental and/or physical faculties due to his consumption of alcohol. 152 S.W.3d at 127, 131. While the defendant in *Gray* was charged with DWI by reason of the introduction of alcohol into his system, it was shown at trial that, at the time of arrest, the defendant was also taking antidepressant medications and that those medications made the defendant more susceptible to the influence of alcohol. The court gave the jury a synergistic effect charge similar to the one given in this case, *id.* at 126-27, and the Court of Criminal Appeals found no error. *Id.* at 133-34.

It is, however, significant that the defendant in *Gray* was charged with being intoxicated solely by reason of the introduction of alcohol into his body. Under those circumstances, the Court found that the inclusion of the instruction was necessary to instruct the jury of the law applicable to an issue raised by the evidence, that it did not improperly expand the allegations set forth in the charging instrument, nor did it constitute a comment on the weight of the evidence because an "additional susceptibility" theory had been placed before the jury.

Here, Appellant was charged with having lost the normal use of his mental or physical faculties "by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance." The jury heard testimony that Appellant had consumed alcohol on the day in question, that he regularly consumed a daily dosage of Adderall and, according to his mother's testimony, coming off his Adderall caused him to suddenly fall asleep.[3] His mother opined that, as depicted in the police video made at the time of his arrest, her son appeared to be asleep rather than intoxicated. Officer Barber, on the other hand, concluded that Appellant was intoxicated based upon the totality of circumstances, i.e., his observations and the results of the field sobriety tests. In addition, there was no direct evidence that Appellant had taken his prescribed daily dosage of Adderall prior to his arrest.

Evidence of Appellant's use or non-use of Adderall was relevant solely to explain his then present use of his mental or physical faculties, not his susceptibility to the influence of alcohol. Under those circumstances, the trial court's inclusion of the synergistic instruction in its charge to the jury was not necessary to instruct the jury on the law applicable to the case. Because inclusion of the instruction was not necessary, its inclusion was error because it constituted an impermissible comment on the weight of the

---

[3]Although his mother was not qualified as a medical expert, she had observed the effects of Adderall on her son since he was first diagnosed with ADHD in the tenth grade of high school and his physician prescribed Adderall.

7

evidence. *See* Tex. Code Crim. Proc. Ann. articles 36.14, 38.04, and 38.05 (Vernon 2007).

       III.     Harm Analysis

Because Appellant timely objected to the inclusion of the synergistic effect instruction, we must now determine whether that error was "calculated to injure the rights of Appellant," or whether Appellant "has not had a fair and impartial trial." Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006). This means that there must be no more than *some* harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless. *Almanza*, 686 S.W.2d at 171. "[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.* In analyzing harm under *Almanza*, neither the State nor the defense has a burden to show harm. *Warner v. State,* 245 S.W.3d 458, 464 (Tex.Crim.App. 2008).

In a single paragraph addressing harm, Appellant argues the State relied upon a theory that the effect of taking Adderall, "when combined with the introduction of alcohol into his system, produced intoxication." We disagree.

8

Viewing the entire jury charge, we find the application paragraph properly focused the jury upon the issue of whether the Appellant had lost the normal use of his mental or physical faculties. The evidence introduced at trial clearly supports the conclusion that the Appellant consumed alcohol immediately prior to his arrest and that he had, in fact, lost the normal use of his mental and physical faculties. Furthermore, evidence pertaining to Adderall and its effect upon Appellant centered primarily around trying to explain his sleepy condition, as opposed to trying to establish or refute any synergistic effect.

The State's theory, as alleged in the information, was that the Appellant was intoxicated "by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance." The State's theory did not rely upon a synergistic effect between alcohol and Adderall. Because the issue was whether or not Appellant had lost the normal use of his mental or physical faculties, it did not matter whether the alcohol or the drug, or a combination of the two, caused that loss of use. Accordingly, any error in the submission of the synergistic effect instruction was harmless, and Appellant's sole issue is overruled.

**Conclusion**

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.

9