**AFFIRM and Opinion Filed July 12, 2013**

In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00686-CR

## RENE GUTIERREZ, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause No. F10-35443-K**

### MEMORANDUM OPINION
Before Justices O'Neill, Francis, and Fillmore
Opinion by Justice Francis

After a jury convicted Rene Gutierrez of continuous sexual abuse of a child under the age of fourteen, the trial court assessed punishment at life in prison. In his sole issue, appellant complains the trial court committed reversible charge error by instructing the jury on indecency with a child as one of the manner and means of committing the offense when the evidence failed to raise that issue. We affirm.

M.G. was appellant's adopted daughter. At trial, M.G. was ten years old and testified appellant began abusing her when she was five years old. She testified appellant "touched" her in "wrong places that he was not supposed to." The abuse usually occurred when she was sleeping on the living room couch. She said appellant would take off his clothes and remove her shorts and underwear. Then, he put his "area" in her "area," which she identified through

pictures as her vaginal area and appellant's genital area. M.G. said it felt "weird" and would sometimes hurt. When appellant stopped, her "area would get wet a little" and appellant would go back to bed.

M.G. recalled the first time appellant touched her. On that occasion, she said she had been watching television and tried to go to sleep. She woke up and appellant was on top of her with a flashlight looking at her "area." M.G. said appellant put his "finger with a sharp nail" into the place where she "use[d] the restroom" "number one," which was the same place she described as her "area." She said it made her feel like she did not "want to use the restroom there any more" and said appellant stopped when she "kept on turning over." M.G. said appellant put his finger in the place where she went to the restroom about thirty times. She said he put his "area" in her "area" more times than he put his finger in her area.

When she was nine years old, she told her mother about the abuse. M.G.'s mother testified M.G. told her appellant "touches her wrong and that he touches her down there." The mother said M.G. told her that before appellant would leave in the morning, he would go to where M.G. was sleeping, get on top of her, and put his "man part against her body, against her vagina, and that when he was done, her panties were wet with sticky stuff." M.G.'s mother said she knew it was true because of how M.G. described the incidents. M.G. also told her about an incident where appellant had used a flashlight and was "looking at her vagina, just checking it out, inspecting it."

That day, the mother set up a baby video monitor in the living room where M.G. would sleep. Two days later, appellant was captured on video going to the couch where M.G. was sleeping early in the morning. The recording was admitted into evidence and showed appellant, in only his underwear, hovering over M.G. face to face, before putting his hand inside his

2

underwear. Appellant then suddenly got up and left. Testimony showed the people in the house who were monitoring the video made noise to scare appellant away from M.G. before he could abuse her. Appellant went outside unaware he had been caught on tape. While he was outside, the police were called to the scene. Once they arrived, appellant was arrested.

At trial, appellant denied ever putting his hand on M.G.'s vagina, rubbing his penis against her vagina, or having any kind of sexual contact with her. He suggested his wife put M.G. up to making false allegations against him because she was angry that he was not giving her enough money. With respect to the video, he testified he was "saying goodbye" to M.G. before going to work and she asked him to "rub" her stomach because she could not go to sleep. He did not explain why he was clad only in his underwear or why he had his hand inside his underwear.

The charge in this case allowed the jury to convict appellant of continuous sexual abuse if the jury found beyond a reasonable doubt that, during a period that was thirty or more days in duration, appellant intentionally or knowingly committed two acts of sexual abuse against M.G., namely by the contact or penetration of M.G.'s sexual organ by appellant's sexual organ, or by the contact between appellant's hand and M.G.'s genitals with the intent to arouse and gratify appellant's sexual desire, or by the penetration of M.G.'s sexual organ by appellant's finger. *See* TEX. PENAL CODE ANN. § 21.02 (West 2011). In his sole issue, appellant contends that while the evidence adduced at trial inferred vaginal penetration by appellant's penis and finger, there was no evidence that he committed the offense of indecency with a child (contact between appellant's hand and M.G.'s genitals). Thus, he argues, the trial court erred in including the allegation in the jury's charge.

Jury charge error is reviewed under the standard set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Under that standard, we first determine whether there was error in the charge. *Id*. at 174. If error occurred and the appellant did not object, we will reverse only if the error resulted in "egregious harm." *Id.* at 171.

The code of criminal procedure provides the trial court must "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14. The court's instructions must "apply the law to the facts adduced at trial." *Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004).

Having reviewed the evidence in this case, we conclude it raised the issue of indecency with a child by contact. M.G. testified appellant touched her in the "wrong places" over a period of four years. She specifically recalled the first incident when appellant was on top of her "looking at her area" with a flashlight. During that incident, and on at least thirty more occasions, appellant put his finger in her genital area. We conclude a jury could infer from this evidence that appellant touched M.G.'s genitals with his hand with the intent to arouse and gratify appellant's sexual desire or could infer he actually penetrated her sexual organ with his finger.

Moreover, an allegation of "penetration" of the sexual organ overlaps an allegation of "contact" of the sexual organ because penetration of the genitals necessarily includes contact. *Vick v. State*, 991 S.W.2d 830, 834 n.2 (Tex. Crim. App. 1999). Since the allegation of penetration of M.G.'s sexual organ by appellant's finger overlaps "contact" between appellant's hand and M.G.'s genitals, appellant cannot show egregious harm. We overrule the sole issue.

4

We affirm the trial court's judgment.



      /Molly Francis/
      MOLLY FRANCIS
      JUSTICE



Do Not Publish
TEX. R. APP. P. 47.2(b)

120686F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

**JUDGMENT**

RENE GUTIERREZ, Appellant

No. 05-12-00686-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas
Trial Court Cause No. F10-35443-K.
Opinion delivered by Justice Francis; Justices O'Neill and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 12, 2013.

/Molly Francis/

MOLLY FRANCIS
JUSTICE