IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0867-07






THE STATE OF TEXAS



v.



STEPHEN GREGORY BARBERNELL, Appellee







ON STATE'S PETITION FOR DISCRETIONARY REVIEW

FROM THE NINTH COURT OF APPEALS

MONTGOMERY COUNTY





 Keasler, J., delivered the opinion for a unanimous Court.

O P I N I O N 


 Stephen Gregory Barbernell was charged with DWI. The court of appeals affirmed
the trial judge's decision to grant Barbernell's motion to quash due to the State's failure to
allege which definition of "intoxicated" that it intended to prove at trial. (1) The court reasoned
that intoxication is an act or omission and that the definitions of "intoxicated" provide for
different means of commission. (2) Because we hold that the definitions of "intoxicated" do
not describe an act or omission, we reverse and vacate the judgment of the court of appeals
and remand this case to the trial court.

I. Procedural History

 Barbernell was charged by information with the misdemeanor offense of driving while
intoxicated under Texas Penal Code, Section 49.04. Section 49.04 defines the offense of
DWI and reads, in part, as follows: "A person commits an offense if the person is intoxicated
while operating a motor vehicle in a public place." (3) Section 49.01(2), Texas Penal Code, sets
out two definitions of "intoxicated." (4) 

 "Intoxicated" means:

 (A) not having the normal use of mental or physical faculties by reason of the
introduction of alcohol, a controlled substance, a drug, a dangerous drug, a
combination of two or more of those substances, or any other substance into
the body; or

 (B) having an alcohol concentration of 0.08 or more. (5)


 The information charging Barbernell alleged: "on or about April 30, 2005, in
Montgomery County, Texas, Stephen Gregory Barbernell . . ., while operating a motor
vehicle in a public place, was then and there intoxicated[.]" 

 Barbernell moved to quash the information because the State failed to allege the
definition of "intoxicated" set out in Section 49.01(2) that it intended to prove at trial. In
support of his motion, Barbernell relied on our 1991 decision in Carter v. State, (6) which held
that the State must allege which definition of intoxicated--"loss of faculties" or "per se"
intoxication (i.e., alcohol concentration) (7)--that the State intends to prove at trial. (8) Barbernell
claimed that the information failed to provide him with adequate notice of the manner and
means (i.e., the definition of "intoxicated" that the State intended to prove) in which he
committed the offense. In response, the State argued that our 2004 opinion in Gray v. State (9)
establishes that the definitions of "intoxicated" are not elements of DWI. After a brief
hearing, the trial judge granted Barbernell's motion to quash. The State then timely filed a
notice of appeal. (10)

II. Court of Appeals

 In the Beaumont Court of Appeals, the State argued that the judge erred in granting
Barbernell's motion to quash. (11) In doing so, the State reasserted its reliance on our decision
in Gray, while Barbernell continued to rely on Carter. (12) Finding that Gray did not address
Carter's holding, the court of appeals, after reviewing our analysis of the elements of DWI
in Gray, held that the element of "intoxicated" is an act or omission and that the definitions
of "intoxicated" provide different manner or means to commit intoxication. (13) Due to the
State's failure to allege the definition of "intoxicated" that it intended to prove at trial, the
court held that the information did not sufficiently notify Barbernell of the charged offense. (14) 
As a result, the court affirmed the trial judge's decision to grant Barbernell's motion to
quash. (15)

 In a concurring opinion, Justice Horton noted that Carter is controlling authority. (16) 
However, Justice Horton stated that he believed that the State was correct in asserting that
the definitions of "intoxicated" are evidentiary matters, as opposed to manner and means of
commission, and therefore do not need to be alleged in the charging instrument. (17)

 We granted the State's petition for discretionary review to address the following issue:
"Whether the manner of intoxication, either 'loss of faculties' or 'alcohol concentration,' is
an element of the offense of driving while intoxicated which must be alleged in the charging
instrument[.]" 

 Before we address this particular issue, we provide a general overview of the law
concerning notice and our most recent cases addressing notice in relation to the offense of
DWI. And because the State's ground for review comes to us in light of our decision in
Gray, we will also examine Gray's discussion of the DWI statute.

III. Law

A. Notice

 The Texas and United States Constitutions grant a criminal defendant the right to fair
notice of the specific charged offense. (18) "The charging instrument must convey sufficient
notice to allow the accused to prepare a defense." (19) Toward that end, Chapter 21 of the
Texas Code of Criminal Procedure governs charging instruments and provides legislative
guidance concerning the requirements and adequacy of notice. (20) With respect to
informations, Article 21.21 sets out what facts must be included in an information and states,
in part, "[t]hat the offense [must] be set forth in plain and intelligible words[.]" (21)
Additionally, an information must include everything that is necessary to be proved. (22) An
information is sufficient if it 

 charges the commission of the offense in ordinary and concise language in
such a manner as to enable a person of common understanding to know what
is meant, and with that degree of certainty that will give the defendant notice
of the particular offense with which he is charged, and enable the court, on
conviction, to pronounce the proper judgment[.] (23)

 

 We have recognized that in most cases a charging instrument that tracks the statutory
text of an offense is sufficient to provide a defendant with adequate notice. (24) When a
statutory term or element is defined by statute, the charging instrument does not need to
allege the definition of the term or element. (25) Typically the definitions of terms and elements
are regarded as evidentiary matters. (26) But in some cases, a charging instrument that tracks
the statutory language may be insufficient to provide a defendant with adequate notice. (27) 
This is so when the statutory language fails to be completely descriptive. (28) The statutory
language is not completely descriptive "when the statutes define a term in such a way as to
create several means of committing an offense, and the definition specifically concerns an
act or omission on the part of the defendant." (29) In such cases, "more particularity is required
to provide notice." (30) Thus, "if the prohibited conduct is statutorily defined to include more
than one manner or means of commission, the State must, upon timely request, allege the
particular manner or means it seeks to establish." (31)

 On appeal, because the sufficiency of a charging instrument presents a question of
law, an appellate court reviews a trial judge's decision to quash a charging instrument for
failure to provide adequate notice de novo. (32) 

B. Notice and DWI

 Garcia and Carter are our two most recent cases addressing the issue of adequate
notice under the DWI statute. In our 1988 decision in Garcia, we held that when a defendant
is charged with DWI, in order to provide adequate notice, the State must allege the specific
type of intoxicant(s) that the defendant allegedly used to become intoxicated. (33) In charging
Garcia with DWI, the State alleged that Garcia "'did then and there drive and operate a motor
vehicle in a public place . . . while intoxicated, when [he] did not have the normal use of his
mental and physical faculties.'" (34) 


 In deciding that the specific type of intoxicant must be included in the charging
instrument, we reasoned that the prohibited conduct of becoming intoxicated depends on an
act or omission of the defendant and that such conduct, under the first definition for
"intoxication," "can be accomplished in several different ways." (35) Continuing, we said that
the type of intoxicant "becomes an element of the offense and critically necessary to the
State's proof." (36) Concluding, we held that, because the State failed to allege the type of
intoxicant, the charging instrument did not provide Garcia with adequate notice. (37) 

 Approximately three years later, examining the same statute in Carter, we built on
Garcia's holding and stated that, in addition to alleging the specific type of intoxicant, the
State must also allege the definition of "intoxicated" that it intends to prove at trial to provide
adequate notice. (38) In making this determination, we concluded that the definitions of
"intoxicated" describe two types of DWI offenses, a "loss of faculties" offense and a "per
se offense." (39) The "loss of faculties" offense, we said, 

 may be established by proving the defendant drove or operated a motor vehicle
in a public place while not having the normal use of his mental faculties, or
while not having the normal use of his physical faculties, because of the
introduction into his body of (1) alcohol; (2) a controlled substance; (3) a drug;
or (4) a combination of two or more of those substances. (40)


In contrast, we said that the "per se" offense "may be established by proving the defendant
drove or operated a motor vehicle in a public place while having an alcohol concentration
of 0.10 or more in his blood, breath, or urine." (41)

 Finally, recognizing Garcia and another case discussing notice, we then said that
"given the fundamentally different natures" of the two offenses "and the different behaviors
necessary to commit the two offenses," the State must allege the definition(s) of
"intoxicated" that it intends to prove at trial. (42) We then held that the information, which did
not specify the type of intoxicant Carter allegedly used or the definition of "intoxicated" that
the State would rely on at trial, did not provide Carter with adequate notice so he could
prepare his defense. (43) 

C. Gray v. State

 In Gray, in 2004, we repudiated our statement in Garcia that the specific type of
intoxicant is an element of DWI. In that case, the State charged Gray with DWI, and the
information alleged, in part, that Gray did not have the normal use of his mental and physical
faculties due to the introduction of alcohol. (44) At trial, evidence was admitted establishing
that Gray was taking several anti-depressant medications at the time of the offense. (45) A
chemist testifying on behalf of the State stated that alcohol and anti-depressant drugs have
the same depressant effect on the central nervous system and that when the two are used in
combination with one another, it can result in what has been described as a "synergistic
effect." (46) According to the chemist, the two medications can interact inappropriately: when
used together either one may "accelerate the action of one medication." (47) 

 The trial judge's proposed charge instructed the jury that if the defendant indulges in
the use of the anti-depressant medications and "thereby makes himself more susceptible to
the influence of alcohol than he otherwise would have been, and by reason thereof becomes
intoxicated from recent use of alcohol, he would be in the same position as though his
intoxication was produced by the alcohol alone." (48) The judge's proposed application
paragraph also instructed the jury to convict if it found that Gray was driving while
intoxicated by reason of the introduction of alcohol into his body, either alone or in
combination with anti-depressant medications. (49) Gray objected to the charge, arguing that
it improperly expanded the scope of the of the State's allegation in the information because,
under our decision in Garcia, the specific type of intoxicant alleged to have been used by the
defendant is an element of the offense of DWI. (50) The trial judge overruled the objection, and
Gray was subsequently found guilty and sentenced. (51) 

 Gray appealed, arguing that the jury charge, which instructed the jury on the
"synergistic effect," was not part of the law applicable to the case. (52) The First Court of
Appeals in Houston disagreed and affirmed the judgment of the trial court. (53) We granted
review to decide whether the court of appeals "erred in holding that the instruction
constituted the law applicable to the case when Gray was not charged with intoxication by
a combination of drugs and alcohol." (54) 

 We began by examining the DWI statute and, in particular, Garcia's statement that
the type of intoxicant is an element of DWI. (55) We observed that this statement was dicta
because the issue in Garcia involved pleading notice requirements and was therefore
unnecessary to the resolution of the case. (56) We then noted three "problems with the
statement." (57) 

 "First, it contradicts the statutory definitions of what constitutes an element of the
offense." (58) Section 1.07 defines the elements of the offense as "the forbidden conduct, the
required culpability, the required result, and the negation of any exception to the offense." (59) 
The type of intoxicant does not constitute any of these, and "[t]he mere fact that the DWI
statute separately defines intoxication does not automatically elevate the intoxicant to the
status of an element of the offense." (60) Second, the statement conflicts with our caselaw;
specifically, Ex parte Luna, (61) which addressed the essential elements of the theft statute. (62) 
There, we held that the definitions of "unlawfully" are not elements of the offense of theft
but are evidentiary matters that do not need to be alleged in the charging instrument. (63)
Comparing Ex parte Luna, we said that even though the DWI statute defines "intoxicated,"
this fact does not mean that the types of intoxicants are elements of DWI. (64) Third, it would
be bad public policy to hold that the specific type of intoxicant is an element of DWI because
a defendant could obtain an acquittal if the State, at trial, ultimately proves that the defendant
used another type of intoxicant than the one alleged in the charging instrument. (65) The DWI
statute, we observed, does not focus on the act of becoming intoxicated; it focuses on the act
of the defendant while intoxicated. (66) Based on these considerations, we held that the type
of intoxicant used by the defendant is not an element of DWI and "disavow[ed] the dicta in
Garcia to the contrary." (67) 

 Examining the jury charge in Gray's case, we held that the "synergistic effect"
instructions in the charge did not expand on the allegation in the information and therefore
properly applied the law to the facts of the case. (68) We reasoned that the instructions
"permitted the jury to convict if Gray's drug made him more susceptible to alcohol, but it still
required intoxication due to alcohol." (69)

IV. Analysis

 Reiterating the arguments it made before the trial judge and the court of appeals, the
State contends that by explicitly disavowing Garcia's reasoning in Gray, we necessarily
undermined Carter's holding that the State is required to allege the definition of
"intoxicated" that it intends to rely on at trial. The State asserts that a person's state of
intoxication is not an act or omission; instead, it is the defendant's condition and a
circumstance that accompanies the defendant's act of operating a motor vehicle. In response,
Barbernell argues that our decision in Carter is sound and has not been undermined by Gray. 
Citing Carter as controlling precedent, Barbernell asserts that the court of appeals was
correct in affirming the trial judge's ruling. 

 At the outset, we must make clear that our discussion about the elements of DWI in
Gray had no impact on Garcia's holding concerning the adequacy of notice. We expressly
made this point at the end of our opinion in Gray when responding to the State's request that
we overrule Garcia's notice holding: "Reaching out to address the validity of Garcia's notice
holding would be dicta. And we have rejected this argument before. We decline to consider
it today." (70) Consequently, contrary to the State's argument, Gray's discussion of the
elements of DWI and renunciation of Garcia's statement that the type of intoxicant is an
additional element of the offense, while authoritative with respect to the elements of DWI,
does not directly control the pleading notice issue before us. 

 In analyzing whether a charging instrument provides adequate notice, our notice
jurisprudence makes clear that courts must engage in a two-step analysis. First, a court must
identify the elements of an offense. As recognized in Gray, the elements, defined by the
Legislature, include: the forbidden conduct, the required culpability, if any, any required
result, and the negation of any exception to the offense. (71) Next, as to the second inquiry,
when the Legislature has defined an element of the offense that describes an act or omission,
a court must ask whether the definitions provide alternative manners or means in which the
act or omission can be committed. If this second inquiry is answered in the affirmative, a
charging instrument will supply adequate notice only if, in addition to setting out the
elements of an offense, it also alleges the specific manner and means of commission that the
State intends to rely on at trial. With these principles in mind, we find that it is necessary to
revisit our analysis in Carter.

 A careful review of our decision in Carter reveals that the Court's analysis was
incorrect. First, although the Court, consistent with Gray, began by citing the elements of
DWI as those set out in Article 6701l-1(b) of the Texas Revised Civil Statutes, now codified
in Section 49.04(a), Texas Penal Code, the Court ultimately held that by virtue of the
definitions of the element "intoxicated," that there two separate DWI offenses--"loss of
faculties" and "per se." The Court reached this conclusion based on its determination that
the definitions of "intoxicated" permit the offense of DWI to be proven in two ways. Our
reevaluation of this analysis exposes a serious defect in the Court's reasoning: After
identifying the elements of DWI, the Court neglected to ask whether the definitions of
"intoxicated" concern an act or omission so as to create more than one manner and means
of committing an offense. Instead, without explanation, the Court decided that the two
definitions of "intoxicated" each constitute separate acts or forbidden conduct. In doing so,
the Court failed to reconcile this conclusion with its previous statement that the definitions
of "intoxicated" involve only matters of proof. Then, expanding on its faulty determination,
the Carter Court held that, because the two types of forbidden conduct involve
"fundamentally different natures" and "different behaviors," a charging instrument must
allege the definition of "intoxicated" that the State will seek to prove at trial. 

 The shortcomings of Carter's constitutional analysis have not gone unnoticed by legal
scholars. Criminal law experts Professors Dix and Dawson have criticized this opinion,
stating that the Court "took considerable liberties with the concept of 'behavior' or conduct
constituting an offense." (72) In their view, 

 [t]he State's choice between the methods of proving intoxication does not in
any sense determine what acts, conduct or 'behavior' of the accused that the
State will rely on. Rather, the choice concerns the type of evidence the State
will rely upon to show particular conduct by the accused--'driving' or
'operating' a vehicle--performed while a particular
circumstance--intoxication--existed. (73) 


 Having determined that Carter's holding evolved from a flawed analysis, we now
reevaluate the notice issue according to the dictates of our precedent. With the understanding
that "intoxicated" is an element of DWI (74) and that Section 49.01(2) sets out two definitions
for "intoxicated," we ask whether the definitions of "intoxicated" concern an act or omission
and create two different manners and means of committing DWI. Our recent examination
of the definitions of "intoxicated" in Bagheri v. State (75) leads us to conclude that the answer
to this question is "no." Echoing the sentiments of Professors Dix and Dawson, in Bagheri,
we held that the definitions "set forth alternative means by which the State may prove
intoxication, rather than alternate means of committing the offense." (76) We then explained,
"The conduct proscribed by the Penal Code is the act of driving while in a state of
intoxication. That does not change whether the State uses the per se definition or the
impairment definition to prove the offense." (77) These statements make clear that the
definitions of "intoxicated" are purely evidentiary matters; therefore, they do not need to be
alleged in a charging instrument to provide a defendant with sufficient notice. As a result,
we overrule Carter's holding that the State must allege the definition of "intoxicated" that
it intends to rely on at trial in the charging instrument to provide adequate notice. A charging
instrument that pleads the offense of DWI provides adequate notice when it sets out the
elements of the offense as provided in Section 49.04. 

 Thus, in this case, the information, though it did not allege either definition of
"intoxicated," provided Barbernell with adequate notice, and the court of appeals erred to
conclude otherwise. 

V. Conclusion

 After reevaluating our analysis in Carter, we hold that the definitions of "intoxicated"
in Section 49.01(2) are evidentiary and therefore do not need to be alleged in a charging
instrument. Therefore, a trial court should not quash a DWI information charging a
defendant with DWI due to the State's failure to allege the definition of "intoxicated" that
it intends to prove at trial. The judgment of the court of appeals is reversed and vacated, and
the cause is remanded to the trial court. 


DATE DELIVERED: July 2, 2008

PUBLISH

1. Barbernell v. State, 221 S.W.3d 914, 917-18 (Tex. App.--Beaumont 2007). 
2. Id. at 917.
3. Tex. Penal Code Ann. § 49.04 (Vernon 2003).
4. Tex. Penal Code Ann. § 49.01(2)(A)-(B) (Vernon 2003). 
5. Id.
6. 810 S.W.2d 197 (Tex. Crim. App. 1991).
7. Tex. Penal Code Ann. § 49.01(2) (previously codified at Tex. Rev. Civil
Stat. art. 6701l-(a)(2)).
8. Id.
9. 152 S.W.3d 125 (Tex. Crim. App. 2004).
10. See Tex. Code Crim. Proc. art. 44.01(a)(1) (Vernon Supp. 2005).
11. Barbernell, 221 S.W.3d at 916.
12. Id. 
13. Id. at 917.
14. Id.
15. Id. at 917-18.
16. 221 S.W.3d at 918 (Horton, J., concurring).
17. Id.
18. Lawrence v. State, 240 S.W.3d 912, 916 (Tex. Crim. App. 2007) (citing U.S.
Const. amend. VI; Tex. Const. art. I, § 10; Ferguson v. State, 622 S.W.2d 846, 849
(Tex. Crim. App. 1981) (opinion on reh'g)); Tex. Const. art. V, § 12(b); see also Cole v.
Arkansas, 333 U.S. 196, 201 (1948).
19. Curry v. State, 30 S.W.3d 394, 398 (Tex. Crim. App. 2000) (citing State v.
Mays, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998)). 
20. Moff v. State, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004); Ferguson, 622
S.W.2d at 849-50. 
21. Tex. Code Crim. Proc. Ann. art. 21.21(7).
22. Tex. Code Crim. Proc. Ann. art. 21.03; Tex. Code Crim. Proc. Ann. art.
21.23.
23. Tex. Code Crim. Proc. Ann. art. 21.11; Tex. Code Crim. Proc. Ann. art.
21.23.
24. Lawrence, 240 S.W.3d at 916 (citing State v. Mays, 967 S.W.2d 404, 406 (Tex.
Crim. App. 1998)); Curry, 30 S.W.3d at 398 (citing Olurebi v. State, 870 S.W.2d 58, 62
(Tex. Crim. App. 1994)); Phillips v. State, 597 S.W.2d 929, 934 (Tex. Crim. App. 1980)
(citing Parr v. State, 575 S.W.2d 522, 526 (Tex. Crim. App. 1978); Boney v. State, 572
S.W.2d 529, 532 (Tex. Crim. App. 1978)).
25. Geter v. State, 779 S.W.2d 403, 405 (Tex. Crim. App. 1989) (citing Thomas v.
State, 621 S.W.2d 158, 161 (Tex. Crim. App. 1981); May v. State, 618 S.W.2d 333, 341
(Tex. Crim. App. 1981)).
26. Marrs v. State, 647 S.W.2d 286, 289 (Tex. Crim. App. 1983) (citing Thomas,
621 S.W.2d at 162); see also Curry, 30 S.W.3d at 398.
27. Curry, 30 S.W.3d at 398. 
28. Id.
29. Solis v. State, 787 S.W.2d 388, 390 (Tex. Crim. App. 1990); Geter, 779 S.W.2d
at 405 (citing Ferguson, 622 S.W.2d at 851).
30. Id.
31. Saathoff v. State, 891 S.W.2d 264, 266 (Tex. Crim. App. 1994) (citing 
Ferguson, 622 S.W.2d at 851).
32. Moff, 154 S.W.3d at 601.
33. 747 S.W.2d at 381.
34. Id. at 380.
35. Id. at 381.
36. Id. 
37. Id.
38. 810 S.W.2d at 200.
39. Id. 
40. Id.
41. Id.
42. Id. (citing Garcia, 747 S.W.2d at 381; Solis, 787 S.W.2d at 391).
43. Id.
44. 152 S.W.3d at 126.
45. Id.
46. Id.
47. Id. at 127.
48. Id.
49. Id.
50. Gray, 152 S.W.3d at 131.
51. Id. at 127.
52. Id.
53. Id.
54. Id.
55. Id. at 131.
56. Id. at 132.
57. Id.
58. Id.
59. Id. (citing Tex. Penal Code Ann. § 1.07(a)(22)).
60. Id.
61. 784 S.W.2d 369 (Tex. Crim. App. 1990).
62. Gray, 152 S.W.3d at 132.
63. Ex parte Luna, 784 S.W.2d at 371.
64. Gray, 152 S.W.3d at 132.
65. Id. 
66. Id.
67. Id.
68. Id. at 133.
69. Id.
70. 152 S.W.3d at 134 (majority opinion), 136 (Cochran, J., dissenting).
71. Tex. Penal Code Ann. § 1.07(22).
72. Dix & Dawson, 41 Texas Practice and Procedure § 20.314 (2nd ed. 2001).
73. Id.
74. Gray, 152 S.W.3d at 131.
75. 119 S.W.3d 755 (Tex. Crim. App. 2003)
76. Id. at 762 (emphasis in original).
77. Id.