In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00038-CR


______________________________




CHRISTOPHER LYNN BRIGHTMON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 71st Judicial District Court


 Harrison County, Texas


Trial Court No. 08-0281X




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 In a single jury trial, Christopher Lynn Brightmon was convicted both for aggravated assault
(using a sawed-off shotgun to shoot at Guadalupe Rodriguez) and for possession of a prohibited
weapon (the shotgun). See Tex. Penal Code Ann. §§ 22.02(a)(2) (aggravated assault), 46.05(a)(3)
(Vernon Supp. 2008) (possession of a prohibited weapon). The jury assessed punishment at fifteen
years' and three years' imprisonment, respectively, to run concurrently.

 On appeal, Brightmon argues that the trial court erred by not instructing the jury that the State
had abandoned from the indictment "paragraph B," alleging a third offense, deadly conduct. Because
the State had abandoned that allegation before argument, the charge submitted to the jury does not
contain that allegation. Brightmon argues that, in the absence of a special instruction, the jury might
have concluded that one way of committing aggravated assault was to simply discharge a firearm
in the direction of another person.

 A trial court's charge to the jury must set forth the "law applicable to the case." Tex. Code
Crim. Proc. Ann. art. 36.14 (Vernon 2007). Not only must the trial court fully instruct the jury on
the law applicable to the case, but it must also apply that law to the facts presented. Gray v. State,
152 S.W.3d 125, 127 (Tex. Crim. App. 2004). The charge must apply the law to the facts adduced
at trial because the jury must be instructed under what circumstances to convict or acquit. Id. at
127-28; Holland v. State, 249 S.W.3d 705, 709 (Tex. App.--Beaumont 2008, no pet.). (1)

 In this case, although the complete indictment was read to the jury before trial, the charge that
ultimately went to the jury did not charge the jury on the section of the indictment that was
abandoned. Thus, there is no error in the charge as presented to the jury. To counsel's credit, he
acknowledges that the charge does not contain error and that trial counsel affirmatively stated "no
objection" to the charge in the form submitted to the jury. Brightmon argues that, because the charge
failed to explain the absence of paragraph B, the jury may have convicted him of aggravated assault
based just on that deadly conduct allegation, which would not have required threat of imminent
bodily injury, but only that he discharged the weapon in the direction of the victim. He has provided
us with no authority requiring a court to explain why the charge omits an allegation of wrongdoing
made in the indictment, and we are aware of none.

 At trial, counsel did not object to the charge as given or request a separate instruction. Thus,
even if we concluded that the trial court erred in some respect, we must be convinced that the
defendant suffered egregious harm before reversal would be appropriate. Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

 We assess egregious harm by examining the whole jury charge, the evidence (in light of
contested issues and the weight of the probative evidence), the arguments made by the parties, and
any other relevant information shown by the trial record. Warner v. State, 245 S.W.3d 458, 461
(Tex. Crim. App. 2008). For harm to be egregious, it must be actual (not just theoretical) harm and
must affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a
defensive theory. Id. at 461-62.

 Brightmon attempts to show error in a separate fashion by arguing that, because the record
shows the jury was given the impression that he could be guilty of aggravated assault without
evidence of a threat of imminent bodily injury, the absence of explanation caused egregious harm. 
Brightmon relies on Sanchez v. State, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006), to make his
argument.

 In Sanchez, the Texas Court of Criminal Appeals ultimately found both error and egregious
harm because the jury was instructed in such a way "that it was not required to find at least two
elements of the offense . . . to be proven beyond a reasonable doubt prior to convicting the
appellant." Id. at 125.

 We do not find Brightmon's argument persuasive. In this case, the jury was properly
instructed in the charge that it could find Brightmon guilty only if it concluded beyond a reasonable
doubt that he had committed each element of aggravated assault. This differs from the situation
described in Sanchez, where the charge instructs the jury that it could find a defendant guilty of an
offense, but then omits a necessary element of the offense from the charge. In either situation, the
question is whether the jury followed the charge as given by the court. In Sanchez, if the jury did
so, it could convict without finding that he had committed elements of the offense.

 We generally presume the jury follows the trial court's instructions. Renteria v. State, 206
S.W.3d 689, 707 (Tex. Crim. App. 2006); Colburn v. State, 966 S.W.2d 511, 520 (Tex. Crim. App.
1998); Williams v. State, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996) (jury presumed to follow
court's instructions as given); Loun v. State, 273 S.W.3d 406, 421 n.21 (Tex. App.--Texarkana 2008,
no pet.). As stated in Colburn, the presumption is rebuttable, but the appellant has pointed to no
evidence in rebuttal. Our review of this record reveals nothing other than speculation and argument
of counsel to suggest that the jurors did other than as they were instructed to do. Under these facts,
we presume the jury followed the trial court's instructions.

 No error has been shown. Even if the absence of an explanatory instruction was error,
egregious harm has not been demonstrated.

 We affirm the judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: June 12, 2009

Date Decided: July 9, 2009


Do Not Publish
1. We recognize that a defendant is entitled, upon a timely request, to an instruction on any
defensive theory raised by the evidence, provided that (1) the defendant timely requests an
instruction on that specific theory, and (2) the evidence raises that issue. Rogers v. State, 105
S.W.3d 630, 639 (Tex. Crim. App. 2003); Peavey v. State, 248 S.W.3d 455, 464 (Tex.
App.--Austin 2008, pet. ref'd). In this case, the instruction now contemplated does not involve a
defensive theory, but an explanation of the absence of a formerly alleged crime from the charge.



urisdiction in which he resided or intended to reside for more than seven days.


 He
was also obligated to update that registration with the local law enforcement authority annually,
within thirty days before and thirty days after his birthday.


 According to the State's evidence,
Ramos failed to make the annual registration for 2002 within thirty days of his August 2nd birthday.
            On appeal, Ramos contends his conviction and sentence


 are not supported by legally or
factually sufficient evidence. We disagree.
The Evidence Is Legally Sufficient
            Challenging the legal sufficiency of the evidence, Ramos argues that the State charged him
with failure to register initially on establishing his current residence in Cass County, but that the
State's proof addressed his failure to renew his registration on or about August 2, 2002. According
to the record, Ramos' birthday was August 2nd. Therefore, Ramos was obligated to register
annually, within thirty days before or after each 2nd day of August, with Connie Wise, who
monitored sexual offender registrations for the sheriff's office of Cass County, Texas, the county of
Ramos' residence. Ramos had properly registered with Wise in 1999, 2000, and 2001. In March and
June 2002, Ramos properly registered changes of address with Wise. But, according to evidence
presented by the State, Ramos failed to register with Wise within thirty days before or after August
2, 2002. 
            In reviewing the legal sufficiency of the evidence, we examine the relevant evidence in the
light most favorable to the verdict and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7
(Tex. Crim. App. 2000). When legal sufficiency of the evidence is challenged based on a variance
between the charge and the proof, the challenge here, we measure the sufficiency of the evidence
against the indictment and the court's charge to the jury. Fisher v. State, 887 S.W.2d 49, 53 (Tex.
Crim. App. 1994) (op. on reh'g); Smith v. State, 135 S.W.3d 259, 261–62 (Tex. App.—Texarkana
2004, no pet.); Cates v. State, 72 S.W.3d 681, 688 (Tex. App.—Tyler 2001, no pet.). We review the
variance for materiality, because only a "material" variance will render the evidence insufficient. 
See Gollihar v. State, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001); Smith, 135 S.W.3d at 262. That
"materiality" inquiry requires us to determine whether the variance deprived Ramos of notice of the
charges or whether the variance subjects him to the risk of later being prosecuted for the same
offense. Fuller v. State, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002); Smith, 135 S.W.3d at 262; see
Gollihar, 46 S.W.3d at 257. This variance was not material; therefore, the evidence was not legally
insufficient because of that variance.
            The indictment alleged that,
on or about the 2nd day of August, A.D. 2002, . . . CONRAD KEITH RAMOS . . . 
while being a person required to register with the local law enforcement authority in
the municipality where the defendant resided or intended to reside for more than
seven days, to-wit: Marietta, Texas, because of a reportable conviction for Indecency
with a Child, intentionally, knowingly, or recklessly fail[ed] to register with the local
law enforcement authority in said municipality, to-wit: Cass County Sheriff's
Department, Cass County, Texas.
The indictment also referenced as the relevant statute Texas Code of Criminal Procedure Article



"62.10(a)(b)(2)." At the time, Article 62.10(a)


 of the Texas Code of Criminal Procedure provided
that a person who is required to register as a sex offender and who violates "any requirement of this
chapter"—Chapter 62, "Sex Offender Registration Program"—commits an offense. Article
62.10(b)(2) provided the grade of the offense, which is not at issue in this appeal. Therefore, in
citing to the statute, the indictment failed to explicitly point to either a violation of the obligation to
register initially or a violation of the obligation to register annually.
            While the indictment could be read as charging a failure to register initially on establishing
his residence, it merely charges Ramos with failing to register on or about August 2, 2002. And,
from the record, the significance of August 2, 2002, is no mystery. It was his birthday, and therefore
the date marking his obligation to register annually. The charge to the jury essentially tracked the
indictment's language.
            Ramos does not claim surprise based on the variance, and in fact defended at trial on the
basis that his failure to register on or about August 2, 2002, was justifiably based on permission not
to report. There was no surprise to Ramos.
            Ray Copeland, investigator for the Cass County Sheriff's Office, interviewed Ramos about
Ramos' failure to register. Ramos gave a written statement, which was introduced into evidence. 
In the statement, Ramos says that a "blue warrant" alleging a parole violation had issued for him
because Ramos was arrested for driving while intoxicated (DWI) in Mount Pleasant, Texas. In his
statement, Ramos said that he found out about this warrant on "7-02," which caused him not to report
to the sheriff's office on "8-02-02." Knowing he would be arrested, Ramos wrote, "I just left and
worked else where [sic] then moved back here to Grand Saline, TX[,] worked for 6 mths [sic] and
waited for Cass Co. or who ever to come get me. . . . "


 Ramos concludes the written statement by
saying that the blue warrant is the reason he did not register on his birthday, August 2, 2002, as he
had done "every year." 
            Craig Biggar, Ramos' parole officer, testified that, when Biggar took over supervision of
Ramos' parole, Biggar was told that Ramos had a pending DWI charge. Biggar's predecessor and
supervisor discussed the matter and "had decided to let Mr. Ramos go to court before they did
anything about it." Biggar was told of this arrangement when he took over supervision of Ramos'
parole. In July 2002, Biggar's supervisor changed. The new supervisor instructed Biggar to obtain
a warrant for Ramos. Biggar spoke to Ramos in July 2002, and advised Ramos of the blue warrant. 
According to Biggar, Ramos promised to turn himself in to authorities in August, when he had an
appearance in court, presumably for the DWI. Biggar said to Ramos, "Okay, that's fine." Ramos did
not present himself to any court during August and was listed as an absconder with the parole
authorities. Biggar stated that he never told Ramos that Ramos did not have to register as a sex
offender. 
            From Ramos' written statement it is clear he (a) knew he was obligated to report thirty days
before or after August 2, 2002, and (b) consciously chose not to. Wise, the officer in charge of sex-offender registrations for Ramos' jurisdiction, testified Ramos had regularly reported for three years
before the date in question, including two registrations of address changes within about six months
before August 2002.
            Ramos was obligated to register with local law enforcement officials, as a result of his final
conviction for indecency with a child. See Tex. Code Crim. Proc. Ann. art. 62.001(5)(A) (Vernon
Supp. 2005). He was required to report to the appropriate local law enforcement agent within thirty
days of his birthday each year. See Tex. Code Crim. Proc. Ann. art. 62.058(a). A rational jury
could have found, beyond a reasonable doubt, the elements of failure to register annually as a sex
offender. And there was no material variance between the indictment and the proof. The evidence
is legally sufficient.
The Evidence Is Factually Sufficient
            Ramos next challenges the factual sufficiency of the evidence. In our review of the factual
sufficiency of the evidence concerning matters where the State has the ultimate burden of proof or
persuasion, we employ the standards set forth in Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim.
App. 2004). We view all the evidence in a neutral light and determine whether the evidence
supporting the verdict is too weak to support the finding of guilt beyond a reasonable doubt or if
evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt standard could
not have been met. Threadgill v. State, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004) (citing Zuniga,
144 S.W.3d at 486). If the evidence is factually insufficient, we must reverse the judgment and
remand for a new trial. Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).
            In his case-in-chief, Ramos presented only one witness, his former parole officer, who
supervised Ramos in 1999. Officer David Montgomery testified that, when he supervised Ramos,
Ramos had complied with the terms of his parole, including timely reporting and wearing a leg
monitor. That evidence does not contradict the evidence of the violation here.
            In challenging the factual sufficiency of the evidence, Ramos contends that Biggar gave his
permission to Ramos to turn himself in in August and that, therefore, Ramos did not have the
necessary intentional, knowing, or reckless state of mind in failing to register. Ramos offers no
authority or analysis of this point and does not argue mistake of law or fact. Regardless, the State
proffered testimony that, in 2002, Ramos did not report to the proper authorities within thirty days
of his birthday. As stated above, Ramos' written statement demonstrates he was obligated to report. 
Whether he thought he had Biggar's permission to delay his annual report is not relevant to the
inquiry. And there was no evidence which would have precluded a finding of guilt beyond a
reasonable doubt. The evidence is factually sufficient to demonstrate that Ramos intentionally,
knowingly, or recklessly failed to register within thirty days of August 2, 2002.
            We affirm the trial court's judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          March 27, 2006
Date Decided:             May 4, 2006

Do Not Publish