ACCEPTED
03-14-00138-CR
5177643
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/6/2015 2:47:48 PM
JEFFREY D. KYLE
CLERK

# NO. 03-14-00138-CR

# IN THE COURT OF APPEALS

## FOR THE

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/8/2015 8:38:00 AM
JEFFREY D. KYLE
Clerk

# THIRD SUPREME JUDICIAL DISTRICT OF TEXAS

---

## LARRY DEWAYNE GARRETT,

## APPELLANT

## VS.

## THE STATE OF TEXAS
## APPELLEE

---

## APPELLANT'S BRIEF

## ON APPEAL FROM COUNTY COURT AT LAW

## NUMBER ONE, BELL COUNTY, TEXAS

## NO. 2C1307176

**Bobby Dale Barina**
State Bar# 01738480
Attorney for Appellant
455 East Central Texas Expwy
Suite 104
Harker Heights, Texas 76548
Telephone: (254) 699-3755
Telecopier: (254) 699-1074
bobbydalebarina@barinalaw.com

**Oral Argument is not Requested**

i

# Identity of Parties and Counsel

Appellant, pursuant to Rule of Appellant Procedure 38.1(a), provides the following list of all parties to the trial court's judgement and the names and addresses of all trial and appellant counsel.

Larry Dewayne Garrett — Appellant

Judge John Mischtian — Trial Judge
Judge of County Court at Law
Number Two
1201 Huey Road
Belton Texas, 76513

Mark Currier — Trial Counsel for the State
Assistant County Attorney — Appellant Counsel for the State
Bell County Attorney's Office
SBOT No. 00793575
1201 Huey Road
Belton Texas, 76513

Mr. Michael White — Trial Counsel for the Appellant
SBOT No. 00785231
100 Kasberg Drive, Suite A
Temple, Texas 76502

Bobby Dale Barina — Appellant Counsel for the
SBOT No. 01738480 — Appellant
455 East Central Texas Expressway
Suite 104
Harker Heights, Texas 76548

# Table of Contents

IDENTITY OF PARTIES AND COUNSEL..........................................ii

INDEX OF AUTHORITIES...............................................................iv

STATEMENT REGARDING ORAL ARGUMENT............................1

NATURE AND RESULTS OF THE CASE.......................................1

STATEMENT OF FACTS................................................................2

POINT OF ERROR........................................................................15

ARGUMENT AND AUTHORITIES..............................................15

CONCLUSION..............................................................................20

PRAYER........................................................................................20

CERTIFICATE OF SERVICE......................................................21

CERTIFICATE OF SERVICE......................................................21

CERTIFICATE OF COMPLIANCE..............................................21

APPENDIX...................................................................................22

# Index of Authorities

**Page Number**

**Federal Cases**

*Jackson v. Virginia*, 443 U.S. 307, 318–19, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ............ 16

*Jackson*, 443 U.S. at 319, 99 S.Ct. 2781 ............................................................. 19

**State Cases**

*Brooks v. State*, 323 S.W.3d 893, 902 (Tex.Crim.App.2010) ..................................... 16
*Brooks*, 323 S.W.3d at 902 .......................................................................... 20
Chapter 85 of the Family Code ....................................................................... 19
*Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App.2007) .................................... 16
*Gharbi v. State*, 131 S.W.3d 481, 482–83 (Tex.Crim.App.2003) ................................. 16
*Gollihar v. State*, 46 S.W.3d 243, 254 (Tex.Crim.App.2001) .................................... 16
*Gray v. State*, 152 S.W.3d 125, 127–28 (Tex.Crim.App.2004) ................................... 16
*Harvey v. State*, 78 S.W.3d 368, 370–71 (Tex.Crim.App.2002) .................................. 17
*Harvey*, 78 S.W.3d at 370–71 ....................................................................... 19
*Harvey*, 78 S.W.3d at 371 ........................................................................... 17
*Malik v. State*, 953 S.W.2d 234, 236–40 (Tex.Crim.App.1997) .................................. 16
*Malik*, 953 S.W.2d at 237 ........................................................................... 16
Section 6.504 ..................................................................................... 18, 19
*Villarreal*, 286 S.W.3d at 327 ...................................................................... 19

**State Statutes**

25.07 of the Texas Penal Code .................................................................. 1, 15, 19
Article 17.292, Code of Criminal Procedure ......................................................... 15
Chapter 83, Family Code .............................................................................. 15
Chapter 85, Family Code .............................................................................. 15
Chapter 88, Family Code .............................................................................. 15
Section 6.504, Family Code ........................................................................... 15
TEX. PENAL CODE ANN. § 25.07(a) ............................................................. 15, 16, 18
TEX. PENAL CODE ANN. § 25.07(a)(1)-(5) .......................................................... 15
TEX.CODE CRIM. PROC. ANN. art. 36.14 ............................................................. 16
Rule of Appellant Procedure 38.1(a) ................................................................. ii

NO. 03-14-00138-CR

IN THE COURT OF APPEALS

FOR THE

THIRD SUPREME JUDICIAL DISTRICT OF TEXAS

---

LARRY DEWAYNE GARRETT, APPELLANT

VS.

THE STATE OF TEXAS, APPELLEE

---

## APPELLANT'S BRIEF

To the Honorable Court of Appeals:

## STATEMENT OF THE NATURE AND RESULT OF THE CASE

The Appellant was charged with violation of a protective order.
The offense alleged was a violation of 25.07 of the Texas Penal Code. A
jury convicted Larry Dewayne Garrett of Violation of a Protective
Order. (C.R. at 21), (4 R.R. at 93). The Jury assessed his punishment at
180 days confinement in the county jail, and a five hundred dollar fine.
(C.R. at 24), (4 R.R. at 33-34). The trial court, the Honorable Judge
John Mischtian, Judge of County Court at Law Number Two, sentenced
Larry Dewayne Garrett in accordance with the verdict. Larry Dewayne
Garrett timely filed this notice of appeal. (C.R. at 29)

1

## Statement Regarding Oral Argument

Oral argument will not aid the Court's decisional process in this appeal.

## STATEMENT OF FACTS

Volume 3 of 7

January 27, 2014 (3 R.R. at 5)

The Court called the case and both sides announced ready. (3 R.R. at 5) The state read the indictment. (3 R.R. at 5-7) The charge was violation of a protective order. The Appellant entered a plea of not guilty. (3 R.R. at 6) The state's witnesses were sworn in. (3 R.R. at 8) The state made his opening statement. (3 R.R. at 9-11) The Appellant reserved the right to open. (3 R.R. at 11) The rule was invoked. (3 R.R. at 12)

## STATE'S CASE-IN-CHIEF

## MARINA GARRETT (3 R.R. at 13)

The state's first witness was Marina Garrett. She lived in Temple, Bell County Texas. (3 R.R. at 13) She lived with her fifteen year old daughter, identified as T.C. and her six year old son identified as identified as L.G. (3 R.R. at 14)

2

She worked at Scott and White Hospital as an imaging specialist. At the time of the trial the Appellant was her ex-husband. (3 R.R. at 14) She identified the Appellant in the courtroom. (3 R.R. at 14-15) She had obtained a protective order against the Appellant in June of 2013. (3 R.R. at 15)

One of the conditions of the protective order was that the Appellant was not to go within a thousand feet of her residence. Her residence was ███████████████████████████████. (3 R.R. at 16) The state offered a certified copy of the protective order as state's exhibit number 1 and it was admitted without objection. (3 R.R. at 17)

On September 10, 2013, she was at home and she heard her dog barking. She got up to investigate. (3 R.R. at 18) She looked through the peephole of the front door and she saw the Appellant standing right in front of the door. (3 R.R. at 14). She told him that she was calling the law because she had a protective order. He asked her if she had a man in the house. (3 R.R. at 19) Her daughter came out of her bedroom, while the Appellant was outside. (3 R.R. at 19, 26) She saw his car parked outside the front door. (3 R.R. at 20)

3

The state offered pictures of the home as state's exhibit number 2-8, and they were admitted without objection. (3 R.R. at 22) She recognized him and she recognized his voice. She called the police. The police came to the home. (3 R.R. at 27) She told the police what had happened. (3 R.R. at 27-28) Once the Appellant left, he did not return. (3 R.R. at 28) She believed that from the time that the Appellant knocked on the door to time he left was maybe 5-6 minutes. (3 R.R. at 29)

**CROSS-EXAMINATION (3 R.R. at 30)**

She gave a written statement to the police. (3 R.R. at 30) When asked about how she knew it was the Appellant she stated that she could see him through the peephole down to his waistline. (3 R.R. at 33) She looked though the peephole and the window. (3 R.R. at 38) She described his car as his 1997 Buick LeSabre with the trunk tied down. (3 R.R. at 36) The car was parked outside her home. (3 R.R. at 37)

She had filed for divorce and requested a protective order against the Appellant. (3 R.R. at 42) This gave her an advantage in the divorce if she could go to court while he was in jail. (3 R.R. at 42) Larry Garrett

4

went to jail on September 13, 2013. (3 R.R. at 39) He was in jail the entire time. (3 R.R. at 43) The Appellant was brought from the jail to the courtroom for the hearing on the divorce. (3 R.R. at 42)

## REDIRECT EXAMINATION (3 R.R. at 45)

During a hearing outside the presence of the jury, the State summarized expected testimony in order to have the court allow the question and answers on the subject. (3 R.R. at 47) The expected testimony was that the Appellant had been in jail at the time of the protective order. She had spoken to one of the prosecutors to get the case, for which he was in jail, reduced to a class c misdemeanor. This resulted in the Appellant actually being released from jail. (3 R.R. at 48, 50) Additionally, this prevented him from going back to prison on a parole violation, if he were convicted of an assault causing bodily injury on a family member. There was also a terroristic threat charged. (3 R.R. at 50) This assault was the basis of the protective order. (3 R.R. at 48) The Appellant objected to bolstering (3 R.R. at 48, 49) and that the prejudice of the evidence outweighed any probative value. (3 R.R. at 49) The court overruled the objection (3 R.R. at 49) and directed no mention of the parole. (3 R.R. at 49) The court ruled the Appellant had opening

the door to this testimony. (3 R.R. at 50) The final ruling was that the state could offer that the Appellant was in jail. (3 R.R. at 51)

The jury returned to the courtroom. (3 R.R. at 52) In June when the protective order was issued the Appellant was already in the county jail. (3 R.R. at 52) He was brought over from the jail to the courtroom. (3 R.R. at 52) The protective order was based on charges where she was the complaining victim. (3 R.R. at 52) She requested that the charges be reduced so he would not go away for a long time. (3 R.R. at 53) The result was that he was released from the county jail shortly after. (3 R.R. at 53) The Appellant offered her statement was defense exhibit number one and it was admitted without objection. (3 R.R. at 54)

## RE-CROSS EXAMINATION (3 R.R. at 54)

Defense Counsel questioned her about an affidavit that was marked as Defendant's exhibit number 2. (3 R.R. at 54) This was introduced into the evidence without objections. (3 R.R. at 55) In the affidavit she referred to an argument that was minor. Where no one was hurt and she did not want to press charges. (3 R.R. at 55)

## FURTHER DIRECT EXAMINATION (3 R.R. at 60)

She signed the defense exhibit number 2 with the intent of helping the Appellant. She bonded him out of jail. (3 R.R. at 62)

The state reviewed State's Exhibit number 9, which was a police report, with her. She stated in the report that she wanted him to get help. (3 R.R. at 63)

## T.C. A Minor Child (3 R.R. at 70)

She was Marina Garrett's daughter and The Appellant's former step daughter. (3 R.R. at 71) She lived at the same address as her mother. (3 R.R. at 70) She identified the Appellant in the courtroom. (3 R.R. at 71)

She testified about what occurred on September 10, 2013. She lived with her mother and her brother. (3 R.R. at 72) She spoke about what happened about 2:00 A.M. She had gone to bed around 11;45 P.M. on September 9, 2013. (3 R.R. at 73) She woke up because the Appellant had come to the house. (3 R.R. at 73) She recognized his voice and she saw him though the peephole. (3 R.R. at 75) He left before the police arrived. She spoke to the police officers. (3 R.R. at 77)

7

## CROSS-EXAMINATION (3 R.R. at 78)

She gave a statement to the police. (3 R.R. at 79) She met with the prosecutors and she gave another statement. (3 R.R. at 79)

## REDIRECT EXAMINATION (3 R.R. at 85)

The state showed the witness State's Exhibit Number 10. She recognized it as a statement. Someone else wrote it and she signed it. (3 R.R. at 85)

It was dated March 12, 2013. (3 R.R. at 85) The incident described in the statement was on March 12, 2013.

## RE-CROSS EXAMINATION (3 R.R. at 86)

She was mistaken about making a statement about the events of September 10, 2013. (3 R.R. at 86)

## VOLUME 4 OF 7

January 28, 2014. (4 R.R. at 6)

The court called the case and both sides announced ready. (4 R.R. at 6)

## BILLY BURCH (4 R.R. at 7)

He was a Temple Police Officer. (4 R.R. at 7) He was dispatched to ████████████████████████. (4 R.R. at 9) The call was for a domestic disturbance. He spoke with Marina Garrett. (4 R.R. at 9) She was upset and she described her ex-husband coming to the door and banging on the door. (4 R.R. at 10) She provided an active protective order. (4 R.R. at 10)

Her address was listed in the protective order as a place where the respondent was prohibited from going. (4 R.R. at 11) He then spoke to the person's daughter while he was there. (4 R.R. at 12) Her story was the same as her mother's. (4 R.R. at 12) He did ask the daughter for a statement. (4 R.R. at 12)

## CROSS-EXAMINATION (4 R.R. at 13)

He did not included in his report that he spoke to the daughter (T.C.). (4 R.R. at 16)

## REDIRECT EXAMINATION (4 R.R. at 28)

He had Marina Garett write out a statement. (4 R.R. at 29)

9

**STATE RESTS (4 R.R. at 32)**

**DEFENSE CASE IN CHIEF (4 R.R. at 34)**

**LARRY DEWAYNE GARRETT (4 R.R. at 34)**

He was the Appellant. The focus of the questioning was directed to the events of September 10, 2013. (4 R.R. at 35) He was married during September of 2013. He recognized T.C. as present at court. (4 R.R. at 35)

He did not live at ████████████████████████████ during September of 2013. He did not go there. (4 R.R. at 35) He was never in front of the home, he never at the entryway, on the porch or thousand feet around the property. (4 R.R. at 36)

He had a lab part mixed dog at the residence. (4 R.R. at 37) He testified that the dog would not bark at him. (4 R.R. at 37)

**CROSS-EXAMINATION (4 R.R. at 41)**

He was present in Judge Trudo's court in June 2013 for the protective order hearing. (4 R.R. at 42) He was informed that the protective order had been issued against him. (4 R.R. at 42) He was

ordered to stay a thousand feet away from █████████████████████

████████████. (4 R.R. at 42) He testified that is why he honored the

protective order. (4 R.R. at 43) He had never violated the protective

order. He has left Marina Garrett and her daughter alone. (4 R.R. at 43)

He did not do anything to her. (4 R.R. at 45) He did not have

contact with T.C. (4 R.R. at 45) He did offer that it might have been

another who approached the home. (4 R.R. at 47) He testified that he

was pulled over by a bounty hunter who asked about someone else.

This bounty hunter may have been the person that his ex-wife saw at

her home. (4 R.R. at 47) He attempts to clarify this throughout his

testimony. While it is confusing testimony, he does maintain that he did

not approach the home. He knows that she did not see him there. (4

R.R. at 55)

He testified that he was a convicted felon (48) and that he was on

parole. (4 R.R. at 49)

He was shown state's exhibit number 11. He wrote it to Judge

Trudo. (4 R.R. at 56) It stated that the bounty hunter went by and

violated hiss restraining order for him. (4 R.R. at 57) It appeared that

he was trying to explain or figured out why he was in jail. (4 R.R. at 58)
The bounty hunter told him that he was going by there to look for
someone. (4 R.R. at 59)

**REDIRECT EXAMINATION (4 R.R. at 59)**

**DEFENSE RESTED (4 R.R. at 64)**

**STATE CLOSES (4 R.R. at 64)**

**JURY VERDICT (4 R.R. at 93)**

The jury found beyond a reason doubt that the appellant was
guilty of the offense of violation of a protective order. (4 R.R. at 93)

**VOLUME 5 OF 7**

**SENTENCING HEARING**

January 28, 2014

The court called the case and both sides announced ready. Both
sides waived opening statements. (5 R.R. at 5)

## STATE'S CASE IN CHIEF

### T.C. A Minor Child (5 R.R. at 6)

The State's first witness was the child T.C. (5 R.R. at 6) She had called the police in March. (5 R.R. at 6) She called 911 late at night. (5 R.R. at 6) She heard a disturbance in the front room. (5 R.R. at 7) Her little brother was in the front room and he had started screaming. (5 R.R. at 7) She saw the Appellant on the couch with her mother over his lap. There had been previous incidents. Therefore, she called 911. (5 R.R. at 8). The Appellant told her mother that he was going to kill her. (5 R.R. at 8)

### BILLY BURCH (5 R.R. at 10)

He testified during the guilt/ innocence portion of the trial. responded to the same address on March 12, 2013. On that date, he stayed with the Appellant and the other responding officers took statements. (5 R.R. at 11) The Appellant was agitated. (5 R.R. at 11)

### STATE RESTED (5 R.R. at 12)

## DEFENSE CASE IN CHIEF

## LARRY DEWAYNE GARRETT (5 R.R. at 13)

He testified about the incident on March 12. (5 R.R. at 13)

## VERDICT (5 R.R. at 33)

The jury assessed punishment at 180 days confinement in the county jail (5 R.R. at 33) and a fine of five hundred dollars. (5 R.R. at 34)

## POINT OF ERROR

The evidence was insufficient to support the Appellant's conviction because the State failed to establish under what statute the restraining order Appellant violated was issued.

## ARGUMENT AND AUTHORITIES
## ON POINT OF ERROR NUMBER ONE

The evidence was insufficient to support his conviction because the State failed to establish under what statute the restraining order Appellant violated was issued. The Appellant was convicted of violating section 25.07 of the Texas Penal Code. This section states that "A person commits an offense if, in violation of a condition of bond set in a family violence case and related to the safety of the victim or the safety of the community, an order issued under Article 17.292, Code of Criminal Procedure, an order issued under Section 6.504, Family Code, Chapter 83, Family Code, if the temporary ex parte order has been served on the person, or Chapter 85, Family Code, or an order issued by another jurisdiction as provided by Chapter 88, Family Code, the person knowingly or intentionally...." TEX. PENAL CODE ANN. § 25.07(a) (West 2010). The statute then set forth various types of conduct that will complete the commission of the offense. TEX. PENAL CODE ANN. § 25.07(a)(1)-(5) (West 2013).

15

The standard of review for evidentiary sufficiency challenges. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks v. State,* 323 S.W.3d 893, 902 (Tex.Crim.App.2010); *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App.2007). The sufficiency of the evidence is measured against the elements of the offense as defined by the hypothetically correct jury charge for the case. *Gharbi v. State,* 131 S.W.3d 481, 482–83 (Tex.Crim.App.2003); *Gollihar v. State,* 46 S.W.3d 243, 254 (Tex.Crim.App.2001); *Malik v. State,* 953 S.W.2d 234, 236–40 (Tex.Crim.App.1997). A hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Malik,* 953 S.W.2d at 237. *See also* TEX.CODE CRIM. PROC. ANN. art. 36.14 (West 2012); *Gray v. State,* 152 S.W.3d 125, 127–28 (Tex.Crim.App.2004) (trial court's charge to the jury must set forth the "law applicable to the case").

One of the elements of the offense under 25.07(a) of the Texas

Penal Code is that the culpable act be performed in violation of an order issued under one of the enumerated statutes. *Harvey*, 78 S.W.3d at 371. See *Villarreal v. State*, 286 S.W.3d 321 (Tex.Crim.App.2009), where the court addresses the evidentiary sufficiency and stated that the hypothetically correct jury charge for that prosecution under section 25.07 would include the fact the defendant acted "in violation of an order issued ... under Article 17.292, Code of Criminal Procedure ...."

Here the evidence was insufficient. The Texas Court of Criminal Appeals addressed this in *Harvey v. State*, 78 S.W.3d 368, 370–71 (Tex.Crim.App.2002). There, the court said, "[s]ection 25.07(a) makes it an element of the offense that the culpable act be performed in violation of an order issued under [the enumerated statutes]." *Harvey*, 78 S.W.3d at 371.

The State's amended information of appellant alleged multiple statutory authority under which the protective order was issued, and the evidentiary record is silent on the question. There was evidence the protective order was in effect at the time of appellant's violative conduct, and a copy of the protective order was in evidence. The order, which was introduced as State's exhibit number one, does not states

17

which specific Family Code provision under which it was issued from among those listed in section 25.07(a). In fact it does list any provision of the Family Code to indicate under what provision to order was issues.

The amended information states that "go to and within a thousand feet of the residence of <u>MARINA GARRETT</u> at ███████████ ████████████████████████████who was then and there a protected individual and a member of the family and household of the Defendant, and such act was in violation of an order issued under Section 6.504 and Chapter 85 and Family Code and under Article 17.292 and Chapter 7A of the Code of Criminal Procedures and by another jurisdiction as provided by Chapter 88 Family Code, in the 264'" Judicial District Court" (C.R. at 8) The Court's charge has two different family code provisions in the application paragraph. The application paragraph states "Now, if you find from the evidence beyond a reasonable doubt that on or about the 10th day of September, 2013, in Bell County, Texas, the defendant, Larry Garrett, did then and there intentionally or knowingly go to or within a thousand feet of the residence of Marina Garrett at ██████████████████████,

██████, who was then and there a protected individual or a member of the family or household of the Defendant, and such act was in violation of a court order issued under Section 6.504 or Chapter 85 of the Family Code in the 264th Judicial District Court, then you will find the defendant guilty of a misdemeanor as charged in the information. But, unless you so find beyond a reasonable doubt, or you have a reasonable doubt thereof, you will find the defendant not guilty." C.R. at 18 This shows that jury was not informed of which statute the protective order was issued against the Appellant. Therefore the evidence was insufficient to support the Appellant's conviction because the State failed to establish under what Family Code section the protective order was issued. This is essential in this case because the State was required to show the protective order was issued under the authority of one of the statutes listed in Penal Code section 25.07(a). *Villarreal,* 286 S.W.3d at 327; *Harvey,* 78 S.W.3d at 370–71.

Once all of the evidence is considered in the light most favorable to the judgment, it is clear that a rational trier of fact could not have found, beyond reasonable doubt, that element of the alleged violation of section 25.07. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *Brooks,* 323

S.W.3d at 902. Therefore this court should sustain the Appellant's Point of Error and reverse the judgment of the trial court, and render a judgment of acquittal.

## CONCLUSION

Because the evidence is insufficient to support the Appellant's conviction the judgement of the trial court should be reversed and a judgement of acquittal.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Larry Dewayne Garrett, Appellant prays this Honorable Court to reverse the judgment of conviction for Violation of a Protective Order and, rendered or in the alternative reversed and remanded for a new trial. The Appellant also prays for any other relief that he may be entitled.

BOBBY DALE BARINA
Attorney for Appellant
455 East Central Texas
Expressway, Suite 104
Harker Heights, Texas 76548
Telephone: (254) 699-3755
Telecopier: (254) 699-1074
bobbydalebarina@barinalaw.com
State Bar No. 01738480

## CERTIFICATE OF SERVICE

This is to certify that a copy of the above entitled and numbered brief has been served on the Bell County Attorney's Office, Texas, by delivery of a true copy to them, by depositing the same, postpaid, in an official depository under the care and custody of the United States Postal Service on the ___ day of April, 2015, properly addressed to James Nichols County Attorney, P.O. Box 1127, Belton, Texas, 76513.

BOBBY DALE BARINA

## CERTIFICATE OF SERVICE

This is to certify that a copy of the above entitled and numbered brief has been served on Larry Dewayne Garett, Appellant, by delivery of a true copy to him, by depositing the same, postpaid, in an official depository under the care and custody of the United States Postal Service on the ___ day of April, 2015.

BOBBY DALE BARINA

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies, pursuant to Rule of Appellate Procedure 9.4(i)(3), that this computer-generated brief contains 3,779 words. The software is Microsoft Word 2013.

BOBBY DALE BARINA

21

# APPENDIX

1. Amended Information Filed on November 25, 2013.

2. Application paragraph from the Court's Charge (C.R. at 18)

3. The Final Protective Order introduced as State's Exhibit Number One.

4. Section 25.07 of the Texas Penal Code

# APPENDIX 1

Amended Information Filed on November 25, 2013.

AMENDED 2C1307176

INFORMATION - GENERAL

FILED FOR RECORD

NOV 25 2013

SHELLEY COSTON
COUNTY CLK. BELL CO. TEXAS

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

I, James E. Nichols, County Attorney, of the County of Bell, State of Texas, on the written affidavit of **BILLY BURCH**, a competent and credible person herewith filed in the County Court-At-Law No. 2, of Bell County, Texas, do present in and to said Court: That in the County of Bell, State of Texas, on or about the **10ᵀᴴ DAY OF SEPTEMBER, 2013**, A.D., and anterior to the filing of this information, one **LARRY GARRETT**, the defendant, did then and there intentionally and

knowingly,

go to and within a thousand feet of the residence of <u>MARINA GARRETT</u> at ████ █ ████████████.

████████

who was then and there a protected individual and a member of the family and household of the Defendant, and such act was

in violation of an order issued under Section 6.504 and Chapter 85 and Family Code and under Article 17.292 and Chapter

7A of the Code of Criminal Procedures and by another jurisdiction as provided by Chapter 88 Family Code,

in the 264ᵗʰ Judicial District Court

AGAINST THE PEACE AND DIGNITY OF THE STATE.

James E. Nichols
County Attorney, Bell County, Texas

By: _____
    Assistant County Attorney





8

# APPENDIX 2

Application paragraph from the Court's Charge (C.R. at 18)

Now, if you find from the evidence beyond a reasonable doubt that on or about the 10th day of September, 2013, in Bell County, Texas, the defendant, Larry Garrett, did then and there intentionally or knowingly go to or within a thousand feet of the residence of Marina Garrett at ███████████████████ ████ ██████████████████ who was then and there a protected individual or a member of the family or household of the Defendant, and such act was in violation of a court order issued under Section 6.504 or Chapter 85 of the Family Code in the 264th Judicial District Court, then you will find the defendant guilty of a misdemeanor as charged in the information. But, unless you so find beyond a reasonable doubt, or you have a reasonable doubt thereof, you will find the defendant not guilty.

## APPENDIX 3

The Final Protective Order introduced as
State's Exhibit Number One.

STATE'S
EXHIBIT
1
1/27/14

ORIGINAL

NO. 264,361

| MARINA GARRETT | § | IN THE DISTRICT COURT |
| | § | |
| AND | § | 264th JUDICIAL DISTRICT |
| | § | |
| LARRY DEWAYNE GARRETT | § | BELL COUNTY, TEXAS |

2013 JUN 26 A 10: 5?
SHIRLEY M. BORMAN
DISTRICT COURT
BELL COUNTY, TX
FILED

## FINAL PROTECTIVE ORDER

On June 26, 2013 *+June 19, 2013* the Court heard the Application of MARINA GARRETT for a Protective Order.

*Appearances*

Applicant, MARINA GARRETT, appeared in person and through attorney of record, Erena Streltsov, and announced ready.

Respondent, LARRY DEWAYNE GARRETT, appeared in person and announced ready.

*Jurisdiction*

The Court, after examining the record and hearing the evidence and argument of counsel, finds that all necessary prerequisites of the law have been satisfied and that this Court has jurisdiction over the parties and subject matter of this case.

*Record*

A record of the hearing was made by the court reporter of the 264th District Court.

*Findings*

The Court finds that Respondent's former spouse. and Applicant are married.

The Court further finds that Applicant and Respondent are intimate partners pursuant to 18 U.S.C. § 921(a)(32).

The Court finds that family violence has occurred and that family violence is likely to occur in the future. The Court finds that Respondent, LARRY DEWAYNE GARRETT, has

SCAN
6-27-13

committed family violence. The Court finds that the following protective orders are for the safety and welfare and in the best interest of Applicant and other members of the family and are necessary for the prevention of family violence.

*"Protected Person"*

In this order, "Protected Person" means Applicant, TIARA CHAMBERS and LARRY GARRETT

*Orders*

IT IS ORDERED that Respondent, LARRY DEWAYNE GARRETT, is:

Prohibited from committing family violence as defined by section 71.004 of the Texas Family Code.

Prohibit from doing any act that is intended to result in physical harm, bodily injury, assault, or sexual assault against any Protected Person.

Prohibited from doing any act that is a threat that reasonably places any Protected Person in fear of imminent physical harm, bodily injury, assault, or sexual assault.

Prohibited from committing abuse of a child of the family or household as defined by Texas Family Code section 261.001(1)(C), (E), and (G).

Prohibited from communicating directly with any Protected Person in a threatening or harassing manner.

Prohibited from communicating a threat through any person to any Protected Person.

Prohibited, on the basis of good cause shown, from communicating in any manner with any Protected Person.

Prohibited from engaging in conduct directed specifically toward any Protected Person, including following Protected Person, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass Protected Person.

Prohibited from going to or near, or within 1000 FEET of, any location where any Protected Person is known by Respondent to be and further prohibited from remaining within 1000 FEET after Respondent becomes aware of Protected Person's presence.

Prohibited from going to or near the residences or places of employment or business of any Protected Person. Specifically, Respondent is prohibited from going to or near ████████████ ██████████████████████ and Respondent must specifically maintain 1000 FEET from that location.

Prohibited from going to or near the residences, child-care facilities, or schools TIARA CHAMBERS and LARRY GARRETT normally attend or in which TIARA CHAMBERS and LARRY GARRETT normally reside and Respondent must maintain 1000 FEET from any such location.

Prohibited from removing TIARA CHAMBERS and LARRY GARRETT from the possession of MARINA GARRETT.

Prohibited from harming, threatening, or interfering with the care, custody, or control of a pet, companion animal, or assistance animal, as defined by section 121.002 of the Texas Human Resources Code, that is possessed by any Protected Person.

Prohibited from possessing a firearm or ammunition, unless Respondent is a peace officer, as defined by section 1.07 of the Texas Penal Code, actively engaged in employment as a sworn, full-time paid employee of a state agency or political subdivision.

Prohibited from interfering with Applicant's use of the residence located at ████████████ ██████████████████████, including but not limited to disconnecting utilities or telephone service or causing such services to be disconnected.

IT IS ORDERED that the license to carry a concealed handgun that was issued to Respondent, LARRY DEWAYNE GARRETT, under section 411.177 of the Texas Government

Code is suspended.

IT IS ORDERED that Applicant, MARINA GARRETT, is granted exclusive possession of the residence located at ███████████████████

IT IS ORDERED that Respondent enroll in a battering intervention and prevention program accredited under article 42.141 of the Texas Code of Criminal Procedure

IT IS FURTHER ORDERED that Respondent file with the Court, before the sixtieth day after the date this order is rendered, an affidavit stating either that Respondent has started the program or that the program is not available within a reasonable distance of Respondent's residence. IT IS FURTHER ORDERED that, if Respondent files an affidavit that Respondent has started the program, Respondent shall file with the Court before the date this protective order expires (1) a statement that Respondent completed the program not later than the earlier of the thirtieth day before this protective order expires or the thirtieth day before the first anniversary of the date of this protective order is issued and (2) a letter, notice, or certificate from the program that verifies Respondent's completion of the program. If Respondent fails to provide the affidavit and, if required, the statement and verification of completion of the program as ordered, Respondent may be punished for contempt of court, as provided by section 21.002 of the Texas Government Code, by a fine not to exceed $500, by confinement in jail for a term not to exceed six months, or by both.

IT IS ORDERED that Applicant is granted exclusive possession of the children, TIARA CHAMBERS and LARRY GARRETT.

*Fees, Charges, and Expenses*

IT IS ORDERED that LARRY DEWAYNE GARRETT shall pay the $16 protective order fee, the standard fee for cost of service of this order, the costs of court, and all other fees, charges, or expenses incurred in connection with this order.

IT IS THEREFORE ORDERED that Respondent shall pay sixteen dollars ($16.00) and all other costs to the clerk of this Court on or before the sixtieth day after the date this order is rendered at 1201 Huey Dr, Belton, TX 76513 by cash, cashier's check, or money order.

Relief Not Granted

IT IS ORDERED that all relief requested in the Application for Protective Order but not expressly granted is denied.

*Order Forwarded*

A copy of this order, along with the information provided by Applicant's attorney that is required under section 411.042(b)(6) of the Texas Government Code, shall be forwarded by the clerk of this Court to the sheriff and the appropriate constable of BELL County, Texas.

*Effective Period*

This order shall continue in full force and effect until June 26, 2015. If LARRY DEWAYNE GARRETT is confined or imprisoned on the date the Protective Order would expire, then this Protective order will continue in full force and effect until the first anniversary of the date that LARRY DEWAYNE GARRETT is released from confinement or imprisonment.

*Effect on Previous Order*

The Court finds that an order for emergency protection has been previously issued under article 17.292 of the Texas Code of Criminal Procedure. The Court further finds that, pursuant to article 17.292(f-1) of the Texas Code of Criminal Procedure, to the extent that a condition imposed by that previously issued order conflicts with a condition imposed by this order, this order supersedes the order previously issued under article 17.292 of the Texas Code of Criminal Procedure.

*Enforcement of Child Custody Provisions*

NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS: YOU MAY USE

REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000.

**Warnings:**

A PERSON WHO VIOLATES THIS ORDER MAY BE PUNISHED FOR CONTEMPT OF COURT BY A FINE OF AS MUCH AS $500 OR BY CONFINEMENT IN JAIL FOR AS LONG AS SIX MONTHS, OR BOTH.

NO PERSON, INCLUDING A PERSON WHO IS PROTECTED BY THIS ORDER, MAY GIVE PERMISSION TO ANYONE TO IGNORE OR VIOLATE ANY PROVISION OF THIS ORDER. DURING THE TIME IN WHICH THIS ORDER IS VALID, EVERY PROVISION OF THIS ORDER IS IN FULL FORCE AND EFFECT UNLESS A COURT CHANGES THE ORDER.

IT IS UNLAWFUL FOR ANY PERSON, OTHER THAN A PEACE OFFICER, AS DEFINED BY SECTION 1.07, PENAL CODE, ACTIVELY ENGAGED IN EMPLOYMENT AS A SWORN, FULL-TIME PAID EMPLOYEE OF A STATE AGENCY OR POLITICAL SUBDIVISION, WHO IS SUBJECT TO A PROTECTIVE ORDER TO POSSESS A FIREARM OR AMMUNITION.

A VIOLATION OF THIS ORDER BY COMMISSION OF AN ACT PROHIBITED BY THE ORDER MAY BE PUNISHABLE BY A FINE OF AS MUCH AS $4,000 OR BY CONFINEMENT IN JAIL FOR AS LONG AS ONE YEAR, OR BOTH. AN ACT THAT RESULTS IN FAMILY VIOLENCE MAY BE PROSECUTED AS A SEPARATE MISDEMEANOR OR FELONY OFFENSE. IF THE ACT IS PROSECUTED AS A SEPARATE FELONY OFFENSE, IT IS PUNISHABLE BY CONFINEMENT IN PRISON FOR AT LEAST TWO YEARS.

IT IS UNLAWFUL FOR ANY PERSON WHO IS SUBJECT TO A PROTECTIVE ORDER TO POSSESS A FIREARM OR AMMUNITION. POSSESSION OF A FIREARM OR AMMUNITION, AS DEFINED IN 18 U.S.C. § 921, WHILE THIS PROTECTIVE ORDER IS IN EFFECT MAY BE A FELONY UNDER FEDERAL LAW PNISHABLE BY UP TO TEN YEARS IN PRISON, A $250,000 FINE, OR BOTH.

PURSUANT TO 18 U.S.C. § 925(a)(1), THE RESTRICTIONS ON POSSESSION OF FIREARMS OR AMMUNITION FOUND AT 18 U.S.C. § 922(g)(8), AND IMPOSED BY THIS PROTECTIVE ORDER, DO NOT APPLY TO FIREARMS OR AMMUNITION ISSUED BY THE UNITED STATES OR ANY DEPARTMENT OR AGENCY THEREOF OR ANY STATE OR ANY DEPARTMENT, AGENCY, OR POLITICAL SUBDIVISION THEREOF, WHICH RESPONDENT POSSESSES IN CONNECTION WITH THE DISCHARGE OF OFFICIAL GOVERNMENT DUTIES. THE POSSESSION OF PRIVATELY OWNED FIREARMS AND AMMUNITION, HOWEVER, REMAINS UNLAWFUL AND VIOLATES THE THERMS OF THIS PROTECTIVE ORDER.

IT IS UNLAWFUL FOR ANY PERSON WHO IS SUBJECT TO A PROTECTIVE ORDER TO KNOWINGLY PURCHASE, RENT, LEASE, OR RECEIVE AS A LOAN OR GIFT FROM ANOTHER, A HANDGUN FOR THE DURATION OF THIS ORDER.

INTERSTATE VIOLATION OF THIS PROTECTIVE ORDER MAY SUBJECT RESPONDENT TO FEDERAL CRIMINAL PENALTIES. THIS PROTECTIVE ORDER IS ENFORCEABLE IN ALL FIFTY STATES, THE DISTRICT OF COLUMBIA, TRIBAL LANDS, AND U.S. TERRITORIES.

SIGNED on _June 26, 2013._

_____
JUDGE PRESIDING

APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE:

_____
Respondent

_____
Applicant

**CERTIFIED COPY
DOCUMENT ATTACHED IS A
TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE**

JAN 10 2014

SHELIA NORMAN
DISTRICT CLERK BELL CO., TX
BY_____ DEPUTY

# APPENDIX 4

Section 25.07 of the Texas Penal Code

Vernon's Texas Statutes and Codes Annotated
  Penal Code (Refs & Annos)
    Title 6. Offenses Against the Family (Refs & Annos)
      Chapter 25. Offenses Against the Family (Refs & Annos)

V.T.C.A., Penal Code § 25.07

§ 25.07. Violation of Certain Court Orders or Conditions of Bond
in a Family Violence, Sexual Assault or Abuse, or Stalking Case

Effective: September 1, 2013
Currentness

(a) A person commits an offense if, in violation of a condition of bond set in a family violence, sexual assault or abuse, or stalking case and related to the safety of a victim or the safety of the community, an order issued under Article 17.292, Code of Criminal Procedure, an order issued under Section 6.504, Family Code, Chapter 83, Family Code, if the temporary ex parte order has been served on the person, or Chapter 85, Family Code, or an order issued by another jurisdiction as provided by Chapter 88, Family Code, the person knowingly or intentionally:

(1) commits family violence or an act in furtherance of an offense under Section 22.011, 22.021, or 42.072;

(2) communicates:

(A) directly with a protected individual or a member of the family or household in a threatening or harassing manner;

(B) a threat through any person to a protected individual or a member of the family or household; or

(C) in any manner with the protected individual or a member of the family or household except through the person's attorney or a person appointed by the court, if the violation is of an order described by this subsection and the order prohibits any communication with a protected individual or a member of the family or household;

(3) goes to or near any of the following places as specifically described in the order or condition of bond:

(A) the residence or place of employment or business of a protected individual or a member of the family or household; or

(B) any child care facility, residence, or school where a child protected by the order or condition of bond normally resides or attends;

(4) possesses a firearm; or

(5) harms, threatens, or interferes with the care, custody, or control of a pet, companion animal, or assistance animal that is possessed by a person protected by the order.

(a-1) For purposes of Subsection (a)(5), possession of a pet, companion animal, or assistance animal by a person means:

(1) actual care, custody, control, or management of a pet, companion animal, or assistance animal by the person; or

(2) constructive possession of a pet, companion animal, or assistance animal owned by the person or for which the person has been the primary caregiver.

(b) For the purposes of this section:

(1) "Family violence," "family," "household," and "member of a household" have the meanings assigned by Chapter 71, Family Code.

(2) "Firearm" has the meaning assigned by Chapter 46.

(3) "Assistance animal" has the meaning assigned by Section 121.002, Human Resources Code.

(4) "Sexual abuse" means any act as described by Section 21.02 or 21.11.

(5) "Sexual assault" means any act as described by Section 22.011 or 22.021.

(6) "Stalking" means any conduct that constitutes an offense under Section 42.072.

(c) If conduct constituting an offense under this section also constitutes an offense under another section of this code, the actor may be prosecuted under either section or under both sections.

(d) Reconciliatory actions or agreements made by persons affected by an order do not affect the validity of the order or the duty of a peace officer to enforce this section.

(e) A peace officer investigating conduct that may constitute an offense under this section for a violation of an order may not arrest a person protected by that order for a violation of that order.

(f) It is not a defense to prosecution under this section that certain information has been excluded, as provided by Section 85.007, Family Code, or Article 17.292, Code of Criminal Procedure, from an order to which this section applies.

(g) An offense under this section is a Class A misdemeanor, except the offense is a felony of the third degree if it is shown on the trial of the offense that the defendant:

(1) has previously been convicted two or more times of an offense under this section or two or more times of an offense under Section 25.072, or has previously been convicted of an offense under this section and an offense under Section 25.072; or

(2) has violated the order or condition of bond by committing an assault or the offense of stalking.

**Credits**
Added by Acts 1983, 68th Leg., p. 4049, ch. 631, § 3, eff. Sept. 1, 1983. Amended by Acts 1985, 69th Leg., ch. 583, § 3, eff. Sept. 1, 1985; Acts 1987, 70th Leg., ch. 170, § 1, eff. Sept. 1, 1987; Acts 1987, 70th Leg., ch. 677, § 8, eff. Sept. 1, 1987; Acts 1989, 71st Leg., ch. 614, §§ 23 to 26, eff. Sept. 1, 1989; Acts 1989, 71st Leg., ch. 739, §§ 4 to 7, eff. Sept. 1, 1989; Acts 1991, 72nd Leg., ch. 366, § 2, eff. Sept. 1, 1991. Renumbered from V.T.C.A., Penal Code § 25.08 and amended by Acts 1993, 73rd Leg., ch. 900, § 1.01, eff. Sept. 1, 1994. Amended by Acts 1995, 74th Leg., ch. 658, §§ 2, 3, eff. June 14, 1995; Acts 1995, 74th Leg., ch. 660, §§ 1, 2, eff. Sept. 1, 1995; Acts 1995, 74th Leg., ch. 1024, § 23, eff. Sept. 1, 1995; Acts 1997, 75th Leg., ch. 1, § 2, eff. Jan. 28, 1997; Acts 1997, 75th Leg., ch. 1193, § 21, eff. Sept. 1, 1997; Acts 1999, 76th Leg., ch. 62, § 15.02(c), eff. Sept. 1, 1999; Acts 2001, 77th Leg., ch. 23, § 1, eff. Sept. 1, 2001; Acts 2003, 78th Leg., ch. 134, § 1, eff. Sept. 1, 2003; Acts 2007, 80th Leg., ch. 66, § 2, eff. May 11, 2007; Acts 2007, 80th Leg., ch. 1113, §§ 1, 2, eff. Jan. 1, 2008; Acts 2009, 81st Leg., ch. 87, § 19.001, eff. Sept. 1, 2009; Acts 2011, 82nd Leg., ch. 136 (S.B. 279), §§ 3, 4, eff. Sept. 1, 2011; Acts 2013, 83rd Leg., ch. 96 (S.B. 743), § 2, eff. Sept. 1, 2013; Acts 2013, 83rd Leg., ch. 543 (S.B. 555), § 3, eff. Sept. 1, 2013; Acts 2013, 83rd Leg., ch. 760 (S.B. 893), §§ 4 to 6, eff. Sept. 1, 2013.

Notes of Decisions (51)

V. T. C. A., Penal Code § 25.07, TX PENAL § 25.07
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.